## CRANE CREEK SHOOTING CLUB CO. *v.* CEDAR POINT CLUB CO.

*(Circuit Court, N. D. Ohio, W. D.*  May 1, 1891.)

PUBLIC LANDS—SWAMP LANDS—DECISION OF COMMISSIONER.

By Act Cong. Sept. 28, 1850, the commissioner of the general land-office was constituted a special commissioner for determining the character of lands which, under that act, either passed to the state or were lands subject to sale; and where, in an action of ejectment, it appears that the lands in question were a part of a certain list of lands selected by the state, and claimed by it under the act, but that its claim was rejected by the commissioner in 1852; that again, in 1882, the land was claimed by the state as swamp land, and that the claim was again rejected by the commissioner as having been finally adjudicated by the former rejection thereof; and that the action of the commissioner was sustained by the secretary of the interior on appeal,—such decision of the land department will be regarded as conclusive; and the question whether the lands are really swamp lands, within the meaning of the act, will not be considered by the court.

At Law.

*J. H. Tyler* and *A. Farquarson,* for plaintiff.

*J. D. Ford* and *Squires, Sanders & Dempsey,* for defendant.

Ricks, J. The petition in this case was filed on the 2d day of September, 1889, in the court of common pleas for Lucas county, Ohio. On the 2d of October, 1889, the defendant filed its original answer, and on the same day filed its petition and bond for removing the cause to this court. The petition avers that the plaintiff is a corporation created under and by the laws of the state of Ohio, and that the defendant is also an Ohio corporation. The plaintiff further avers that it has a legal estate, and is the owner, in fee-simple, of certain swamp lands formerly owned by the state of Ohio, which lands are more particularly described as follows: "Being lots 1 and 6, in town 10, section 11 south of range 10, East Michigan meridian, in Lucas county, state of Ohio;" and that said plaintiff is entitled to the immediate possession of said lands so described. That the said defendant, the Cedar Point Club Company, has ever since on or about the 1st day of June, A. D. 1889, unlawfully kept, and does now unlawfully keep, the said plaintiff out of possession thereof. Wherefore said plaintiff prays that it be decreed by the court to be the owner of said lots 1 and 6, the above-described premises, and that it have judgment for the recovery thereof; that the defendant be ordered to deliver to the plaintiff the immediate possession thereof. The defendant, in its original answer, admits that it is a corporation, and that ever since June 1, 1889, it has kept the plaintiff out of possession of the real estate described in the petition. It avers that it is the owner, in fee-simple, of the real estate described in the petition, and was for many years prior to this suit, and is now, in possession of the same as owner thereof; that it purchased the same from Philip Lacorse, who conveyed the same to the defendant prior to this suit; that said Lacorse derived his title and ownership by entry and patents from the United States. On the same day, the defendant filed its petition for removal to this court on the ground that the controversy between the parties involved the construction of an act of congress, and thereby conferred jurisdiction upon this court. On the 22d of January, 1890, the defendant, by leave first had and obtained, filed its amended answer, in which it admits and reaffirms all the allegations of the original answer, and, further answering, says that on December 19, 1850, under the swamp-land act of congress of September 28, 1850, the state of Ohio selected a list of swamp lands to which it claimed it was entitled under the provisions of said last-named act, embracing in the aggregate 32,438.15 acres, included in which was the land described in the plaintiff's petition herein. On the 19th of December, 1850, the register of the land-office at Defiance, Ohio, reported to the general land-office at Washington:

"That the list above named contained all the swamp or overflowed lands unfit for cultivation in this district, as far as a determination can be formed from the plats and descriptive notes in this office, made out in pursuance of a circular from the commissioner of the general land-office, dated November 21, 1850."

On the list of land thus reported from the Defiance land-office was a large tract of marsh land, among which was included the land described

by the plaintiff's petition, which was designated and marked on said list as follows:

DISPUTED TERRITORY NORTH OF THE OLD STATE LINE.

| | |
|---|---:|
| Deep marsh covered with water, 9 s., 9 e., | 2,500 |
| Same, 9 s., 10 e., | 1,500 |
| Same, 10 s., 10 e., | 2,000 |
| | 6,000 |

Upon full consideration of the facts, including that of the character of the land, the claim of the state of Ohio to all of said 6,000 acres was rejected by the commissioner of the general land-office because said lands were not within the operation of the act of September 28, 1850. Said decision was rendered on the 29th of September, 1852, and said lands, including the lands claimed in the plaintiff's petitition, were designated in the general land-office as "List No. 2, Defiance, Ohio." Said rejection was registered in the general land-office on October 8, 1852, and a duly-certified copy thereof was sent to the register at Defiance, Ohio; and on October 7, 1852, a similar copy was sent to the governor of Ohio, and duly received by him. The answer further avers that the authority to determine all questions relating to the lands affected by the act of September 28, 1850, was vested in the secretary of the interior and the commissioner of the general land-office, and that the decision of the commissioner was final, unless an appeal was taken to the secretary of the interior; and the answer avers that no such appeal was taken by the state of Ohio, and that the decision referred to was therefore conclusive as to the character of said land, and as to the title of the plaintiff thereto. The answer further avers that afterwards, on the 11th day of February, 1882, G. H. Foster, a commissioner appointed under the laws of Ohio to represent her in her swamp-land claims against the general government, filed his application with the commissioner of the general land-office to sell the lands within the limits of the Marston survey, which included the 6,000 acres of land heretofore referred to, and including the land claimed in the plaintiff's petition as belonging to the state of Ohio under the swamp grant of September 28, 1850; act of March 3, 1857; and sections 2479, 2481, and 2484 of the Revised Statutes of the United States. The commissioner of the general land-office again rejected said application, for the reason that the state of Ohio had once been heard on said claim, which had been rejected, and from which decision no appeal had been taken, and that thereby said rejection became a final adjudication of the claim. From said decision an appeal was taken by the commissioner for Ohio to the secretary of the interior prior to March 9, 1882, and a request was made at the same time to stay the public sale of said lands, offered in pursuance to the former decision; and on that day the secretary affirmed the decision of the general land-office, and refused to postpone the sale. And thereafter, on application of the state of Ohio, the secretary gave a rehearing on said appeal, and on the 29th of March, 1882, the former decision was re-

affirmed, and it was ordered that said lands be advertised and disposed of as public lands of the United States. The Honorable H. M. Teller having soon thereafter succeeded the Honorable S. J. Kirkwood as secretary of the interior, an application was made to him on behalf of the state of Ohio, and others interested in said land, to have the decision of his predecessor reviewed. Said application was rejected by the new secretary on the 8th day of June, 1882,. for the reason that the former decisions were correct and final, and because the lands had been actually sold under his predecessor's orders, and, such sale having been properly and satisfactorily made, the secretary ordered the. patents to issue upon the entries made at the public offering. The answer further avers that the land described in the plaintiff's petition was embraced within all the foregoing adjudications and decisions, which the defendant avers are final as to all claims of the state of Ohio; and that, subsequent to said decisions, Philip Lacorse, the defendant's grantor, received from the government of the United States a regular patent for the lands described in the plaintiff's petition. The defendant further avers that it was duly transferred on the tax duplicate of Lucas county, and that since 1882 it has owned and possessed the same, and paid taxes thereon for city and county purposes in said county. Wherefore it asks that it may be decreed to be the owner thereof, and its title thereto be forever quieted as to all claims of the plaintiff. The plaintiff filed its demurrer to the above amended answer, because " the same does not state facts sufficient to constitute a ground of defense."

These pleadings present the question whether, assuming all the facts to be true as pleaded in the answer, the plaintiff is precluded by the decisions set forth therein from further contesting the validity and conclusive character thereof. Under the act of September 28, 1850, the commissioner of the general land-office was constituted a special tribunal for determining the character of lands which, under that act, either passed to the state, or were held to be lands subject to sale under the provisions of law. In this case, by affirmative action on the part of the state of Ohio, through its land commissioner at Defiance, the question was fairly presented to the commissioner of the general land-office as to the character of the 6,000 acres of land specifically described in List 2, as set forth in the amended answer. After satisfactory hearing, the exact nature of which is not disclosed by the answer, and is not material for the purposes of this opinion, the land-office held that the 6,000 acres referred to were not swamp lands, and therefore did not pass to the state of Ohio under the act of congress referred to. Of this decision due notice was given to the state of Ohio, both to its land commissioner and to the governor thereof. Under the acts of congress, the right to an appeal to the secretary of the interior was given to the state. This right was not exercised, for reasons which must have been satisfactory at the time to the authorities of the state. Nearly 30 years after that decision the state of Ohio again appealed to the land-office, through its land commissioner, to sell the lands within the limits of the Marston survey, which included the lands in controversy in this case, as belonging to the state

of Ohio under the swamp-grant act of 1850; the act of March 3, 1857; and sections 2479, 2481, and 2484 of the Revised Statutes of the United States. The commissioner of the land-office again rejected this application. From his decision, an appeal was taken to the secretary of the interior, who affirmed the decision of the land commissioner. A petition for rehearing was filed. That was allowed, and, after consideration, the decision of the secretary was reaffirmed. He was then succeeded by Secretary Teller, to whom application was made to review the decision of his predecessor. This petition was heard, and refused for the reasons stated in the amended answer.

This brief statement of the history of this litigation shows conclusively that the state of Ohio has been diligent in her efforts to recover these swamp lands, and escape from the conclusive character of the decision against her in 1852. It is now insisted on the part of the plaintiffs that, conceding all these facts, the defendant is nevertheless without any legal defense in this case, and that the cause should be allowed to proceed to trial, and the plaintiff be permitted to show that the lands referred to were in fact swamp lands, and passed to the state of Ohio by virtue of the act of 1850. I do not think this claim can be conceded. Congress, by the act referred to, created a tribunal for the purpose of determining the character of the lands claimed by the state to have passed by virtue of that act. An appeal was made to this tribunal, as hereinbefore stated, by the state of Ohio, and the decision of the land-office was that these lands were not swamp lands. They were accordingly held to be lands subject to sale; and, after due and proper notice, the lands were sold, and a patent was issued therefor. The supreme court has said:

"When the law has confided to a special tribunal the authority to hear and determine certain matters arising in the course of its duties, the decision of that tribunal, within the scope of its authority, is conclusive upon all others. That the action of the land-office in issuing the patent for any of the public land subject to sale, by pre-emption or otherwise, is conclusive of the legal title, must be admitted, under the principle above stated; and in all courts, and in all forms of judicial proceedings where this title must control, either by reason of the limited powers of the court or the essential character of the proceedings, no inquiry can be permitted into the circumstances under which it was obtained."

But it is claimed that the decision of the land-office was not *res adjudicata*, because the parties now before this court were not parties to the contention before the land-office. But that decision referred to this particular tract of land in dispute, and it was a well settled principle of law that all parties and their privies must take notice of any decision affecting the title of the land to which they make claim. It will easily be seen that to hold otherwise would make the title to such lands very uncertain. The court might find great difficulty in determining what was the actual condition of these lands in 1850. They may then have been under many feet of water, or they may have been arable lands. Subsequent changes in the water-courses and drainage of the state may affect the character of such lands very materially. The decision of the

land-office in 1852 may have been correct, both as to the law and as to the facts relating to the actual condition of the land, as to being overflowed or not. Their condition may subsequently have changed, and to permit of oral proof now upon this point would lead to endless confusion, and perhaps work great injustice to the parties concerned. The only safe course is to act upon the principle announced by the supreme court, and treat the decision of the tribunal appointed at the time to determine that fact as final. The conclusion must therefore be that the decision of the land-office in 1852, not having been reviewed by the state of Ohio, as the law permitted, became final and conclusive as against the state, and neither the state nor its privies can now be permitted to come and controvert that decision. But the amended answer avers that the particular land for which the plaintiff brings suit was included in the land sold under the direction of the general land-office of the United States. The demurrer concedes that fact. It must therefore follow that, upon the pleadings as they stand, the defendant is entitled to the judgment, and the petition must be dismissed.